Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| WAYDA M. RODRÍGUEZ RIVERA<br><br>Parte Apelante<br><br>v.<br><br>BELLA AUTO GROUP DBA FLAGSHIP VOLKSWAGEN FIRST BANK OF PR<br><br>Parte Apelada | TA2025AP00114 | *Revisión Administrativa* procedente del Departamento de Asuntos del Consumidor de Arecibo<br><br>Querella Núm.: ARE-2024-0006340<br><br>Sobre: Compra Venta de Vehículos de Motor |

Panel integrado por su presidenta, la Jueza Grana Martínez, la Jueza Díaz Rivera y la Juez Lotti Rodríguez.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de febrero de 2026.

Comparece ante este foro revisor, la Sra. Wayda M. Rodríguez Rivera (señora Rodríguez Rivera o recurrente) y nos solicita que revoquemos la *Resolución* emitida y notificada el 11 de junio de 2025 por el Departamento de Asuntos del Consumidor (DACo) y, en consecuencia, ordenemos la celebración de una nueva vista administrativa. Mediante el referido dictamen, el foro administrativo desestimó y ordenó el archivo de la querella instada por la señora Rodríguez Rivera.[1]

Por los fundamentos que expondremos a continuación, se *confirma* el dictamen recurrido.

---

[1] A pesar de que se instó un recurso de apelación, acogemos el mismo como *revisión administrativa*, toda vez que se recurre de una determinación final de un foro administrativo. Sin embargo, se mantendrá el mismo alfanumérico asignado por la Secretaría de este Tribunal de Apelaciones por cuestiones de economía procesal.

**I.**

Según surge del expediente, el caso de autos se originó el 3 de junio de 2024, cuando la señora Rodríguez Rivera instó una *Querella* en contra de Bella Auto Group, LLC d/b/a Flagship Volkswagen Bayamón (Flagship Volkswagen) y FirstBank of Puerto Rico (FirstBank) ante el DACo.

En esta, alegó que, en el mes de junio de 2021, adquirió un vehículo marca Volkswagen modelo Atlas del año 2021 en el concesionario Flagship Volkswagen. Manifestó que, tras haber comprado el vehículo, este comenzó a presentar desperfectos eléctricos constantes. Expresó que durante el mes de febrero de 2024 su automóvil sufrió un desperfecto eléctrico mientras era conducido, lo cual provocó que este perdiera control del volante y ella tuviera que maniobrar para no accidentarse. Alegó que debido a dicho incidente abrió un caso directamente con la Volkswagen para que le compraran la guagua, pero su solicitud fue denegada. Además, detalló que el vehículo tuvo que ser llevado en más de cinco (5) ocasiones seguidas al área de servicio del concesionario por distintos desperfectos mecánicos. Asimismo, sostuvo que acudió en varias ocasiones a Flagship Volkswagen en busca de soluciones, pero su reclamo nunca fue atendido. Por ello, solicitó que el concesionario comprara su guagua y le devolviera su dinero.[2]

El 9 de agosto de 2024, FirstBank presentó una *Contestación a Querella*. Mediante la misma, sostuvo que no fue el vendedor del vehículo objeto de la *Querella* por lo que no era responsable sobre las alegaciones allí contenidas. Además, en la misma fecha, instó

---

[2] Respecto a los recursos de revisión de decisiones administrativas, la Regla 59 (E) (1) (a) (e) (f) (3) del Reglamento del Tribunal de Apelaciones, precisa que el apéndice deberá contener, *inter alia*, los siguientes anejos: querella enmendada, contestaciones a la querella, copia de la prueba ofrecida y no admitida, así como cualquier otro documento que formara parte del expediente original y que pudiera ser útil a este tribunal revisor en la resolución de la controversia. Regla 59 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 85-86, 215 DPR __ (2025). Sin embargo, nos percatamos que el expediente de autos se encuentra incompleto.

una *Moción de Desestimación* bajo los fundamentos de que: (1) la querella dejó de exponer una causa de acción que justificara la concesión de un remedio en su contra y que; (2) el vendedor era el responsable de la entrega y saneamiento de la cosa vendida.

Así las cosas, el 30 de octubre de 2024, el DACo notificó a las partes una *Citación de Inspección* para el 29 de enero de 2025 en Flagship Volkswagen Carr. 2 Km 17.7 en Bayamón, Puerto Rico. Posteriormente, el 3 de febrero de 2025, se notificó a las partes el *Informe de Inspección.* En este, el inspector señaló que al momento de la inspección el vehículo no mostró problemas y que los defectos mecánicos alegados por la señora Rodríguez Rivera habían sido trabajados. Además, se les advirtió a las partes sobre su derecho a presentar objeciones al informe y de que, en el caso de que no se presentara objeción alguna, este se consideraría estipulado.

Así las cosas, el 3 de junio de 2025, se celebró la vista administrativa. Desfilada la prueba documental y testifical en la audiencia, el 11 de junio de 2025, el DACo dictó y notificó la *Resolución* recurrida, en la cual formuló las siguientes determinaciones de hechos:

1. El día 3 de junio del 2024, la querellante radic[ó] una querella administrativa en esta agencia contra los negocios co querellados. El día 12 de mayo del 2025, sometió una enmienda a la querella del mismo número.

2. Surge del expediente p[ú]blico que los negocios co querellados por conducto de sus representantes legales contestaron las alegaciones contenidas en la querella.

3. Este Departamento le notificó a todas las partes en litigio y abogados en la querella de título, el informe técnico de inspección de esta agencia. Del expediente público no surge ninguna objeción al contenido del informe. Por lo que se presume y se reafirma la corrección y certeza del contenido del mismo.

A tales efectos, el foro administrativo concluyó que, tras someter el vehículo de motor objeto de la querella a una prueba técnica y este arrojar un funcionamiento mecánico y automotriz

conforme a los parámetros, la señora Rodríguez Rivera no logró probar, durante la vista, sus alegaciones con prueba robusta y convincente. A su vez, indicó que un aviso de comunicación no implicaba necesariamente un defecto de manufactura en una marca o modelo determinado de automóvil. Así pues, el DACo desestimó y ordenó el archivo de la querella presentada por la señora Rodríguez Rivera por falta de causa de acción y falta de prueba.

En desacuerdo, el 11 de julio de 2025, la señora Rodríguez Rivera recurrió ante este foro revisor mediante un escrito intitulado *Apelación*. En este le imputó al foro administrativo la comisión de los siguientes errores:

> Primer señalamiento de error: Erró el juez administrativo en la manera de manejar la presentación de prueba por un querellante que comparece por derecho propio y no aceptar los informes de reparación.

> Segundo señalamiento de error: Erró el juez administrador al no conceder la resolución de la venta y ordenar la devolución del dinero.

> Tercer señalamiento de error: Erró el juez administrador al no atender las reclamaciones sobre violaciones al Artículo 13 y 24.2 del Reglamento de Garantías de Vehículos de Motor.

Atendido el recurso presentado, el 21 de julio de 2025, emitimos una *Resolución* a los fines de concederle, *inter alia*, a la parte recurrente un término de treinta (30) días para la reproducción de la prueba oral, así como un término también de treinta (30) días a la parte recurrida para presentar su oposición al recurso, a contarse a partir desde que se acogiera la transcripción presentada.

Luego de varias incidencias procesales, el 25 de septiembre de 2025, la señora Rodríguez Rivera presentó una *Moción Sometiendo Transcripción*. Por su parte, el 8 de octubre de 2025, Flagship Volkswagen interpuso su *Alegato en Oposición a "Recurso de Revisión"*. Contando con el beneficio de la comparecencia de las partes, resolvemos.

**II.**

**A. Revisión judicial de las determinaciones administrativas**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección*, 174 DPR 247, 254-255 (2008).

La Sección 4.2 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones. (3 LPRA sec. 9672). La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Simpson, Passalacqua v. Quirós, Betances*, 214 DPR 370, 377 (2024). Véase, además, *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581, 591-592 (2020); *Empresas Ferrer, v. ARPe,* 172 DPR 254, 264-265 (2007). Es decir, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. *Voilí Voilá Corp., et al. v. Mun. Guaynabo*, 213 DPR 743, 753 (2024). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Íd.* Así, la revisión judicial constituye el recurso exclusivo para revisar los méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal. *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra,* a las págs.

753-754; *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527, 543 (2006).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección. *Transp. Sonell v. Jta. Subastas ACT,* 214 DPR 633, 648 (2024); *OCS v. CODEPOLA,* 202 DPR 842, 852 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal,* 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 821 (2012).

Nuestro máximo Foro ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra,* a la pág. 754*; Otero v. Toyota,* 163 DPR 716, 729 (2005).

Cónsono con lo anterior, la sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 127 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018). Por ende, los tribunales deben otorgar amplia deferencia a las decisiones de las agencias administrativas. Esto, en virtud de la experiencia y pericia que se presume que tienen esos organismos para atender y resolver los asuntos que le han sido delegados. Sin embargo, a la luz de *Loper Bright Enterprises v. Raimondo*, U.S., 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024) y *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025), al revisar las conclusiones de derecho los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias.

Así pues, son las agencias las que tienen la responsabilidad de aplicar ciertas leyes. Sin embargo, tales interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Vázquez et al. v. DACo, supra.* El foro judicial será quien deberá resolver todas las cuestiones de derecho pertinentes, las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y la revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente. *Íd.*

Lo anterior responde a la vasta experiencia y pericia que presumiblemente tienen estos organismos respecto a las facultades que se les han delegado. *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473, 484 (2024); *González Segarra et al. v. CFSE,* 188 DPR 252, 276 (2013).

Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* a la pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. USAA Fed. Savs. Bank, supra,* a las págs. 484-485; *Asoc. Fcias v. Caribe Specially et al. II,* 179 DPR 923, 940 (2010). Mientras que, las determinaciones de hecho se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, las determinaciones de derecho serán revisadas en su totalidad. Sección 4.5 de la LPAU, *supra; Rolón Martínez v. Supte. Policía, supra,* a la pág. 36; *Torres Rivera v. Policía de PR,* 196 DPR 606, pág. 627 (2016).

Así pues, los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. *Vázquez et al. v. DACo, supra.* Pero principalmente, los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua. *Íd.* Así, reiteramos que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. *Íd.* Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el

deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.

### B. Reglamento de Garantías de Vehículo de Motor

La Ley Núm. 7 de 24 de septiembre de 1979, según enmendada, también conocida como *Ley de Garantías de Vehículos de Motor*, fue promulgada a los fines de proteger al consumidor de vehículos de motor nuevos, asegurándole que el vehículo adquirido tendrá iguales garantías de fábrica que el fabricante o manufacturero otorga a estos vehículos de motor en los Estados Unidos continentales. (10 LPRA sec. 2053). Persigue, a su vez, salvaguardar los intereses de los consumidores frente a los del manufacturero, y el distribuidor o vendedor. *Íd.* A tales efectos, y en virtud de esta Ley, el consumidor descansa en que los fabricantes, distribuidores y vendedores se responsabilizarán por los defectos de fábrica de los que sufra un vehículo de motor nuevo. (20 LPRA secs. 2060, 2061)

Por su parte, el Reglamento de Garantías de Vehículos de Motor (Reglamento Núm. 7159) fue adoptado para implementar y hacer cumplir las disposiciones de la *Ley de Garantías de Vehículos de Motor*, persiguiendo que los vehículos sirvan al propósito para el cual fueron adquiridos, reúnan las condiciones mínimas necesarias para garantizar al comprador la protección de la vida y propiedad, y previniendo las prácticas ilícitas en la venta de vehículos de motor en Puerto Rico. Véase, Regla 2, Reglamento Núm. 7159, *supra.*

En particular, el Reglamento Núm. 7159 dispone que el manufacturero o su agente de servicio autorizado debe proveer al consumidor, cada vez que su vehículo sea entregado al concesionario para reparación o servicio, una orden de reparación legible que indique la fecha en que se ingresó el vehículo al taller, el millaje y las condiciones físicas de este, así como los defectos informados por el consumidor. Véase, Regla 13, Reglamento Núm.

7159, *supra*. De igual forma, impone al concesionario la responsabilidad de entregar al consumidor, una vez reparado el vehículo de motor, una orden de reparación actualizada en la que se detalle cualquier diagnóstico realizado, el trabajo efectuado, las piezas y labor, entre otros aspectos. *Íd*. El incumplimiento con estas obligaciones puede acarrear la imposición de multas administrativas. *Íd*.

A su vez, el referido reglamento, en su Regla 22, dispone que el DACo:

> [P]odrá, a opción el comprador, decretar la resolución del contrato o reducir proporcionalmente el precio de venta de acuerdo con el Código Civil de Puerto Rico, en aquellos casos en que el vendedor, distribuidor autorizado o concesionario, distribuidor de fábrica o fabricante, dentro de los términos de la garantía de fábrica, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos.

Sobre lo que constituye oportunidad razonable, para propósitos de la antedicha disposición, esta se determinará tomando en consideración las circunstancias particulares de cada caso. Véase, Regla 22, Reglamento Núm. 7159, *supra*.

Por otro lado, en lo pertinente al caso de autos, la Regla 24.2 del Reglamento Núm. 7159 dispone también que:

> Todo fabricante, representante o distribuidor de fábrica vendrá obligado a informar al comprador por correo certificado a su última dirección conocida dentro de un término no mayor de treinta (30) días calendario de toda garantía adicional extendida sobre el vehículo, sus partes y/o piezas, cuya garantía no forma parte de la garantía original expedida por el manufacturero como parte de la compra del vehículo de motor.

Así pues, nuestro más Alto Foro ha reconocido que tanto la Ley Núm. 7 como el Reglamento Núm. 7159 deben interpretarse de manera liberal a favor del consumidor. *Polanco v. Cacique Motors*, 165 DPR 156, 164 (2005). Véase, además, Regla 4, Reglamento Núm. 7159, *supra*.

**III.**

En la presente causa, la parte recurrente sostiene, en síntesis, que erró la agencia recurrida en la forma en que manejó la presentación de su prueba. Alega que, en virtud de la jurisprudencia federal, los foros adjudicativos deben aplicar estándares menos rigurosos a las alegaciones de los litigantes que comparecen por derecho propio. En ese sentido, arguye que los entes administrativos deben proteger a los litigantes *pro se* de las consecuencias de errores técnicos pues para cualquier abogado hubiese sido simple lograr la admisión del documento "*Repair Order Detail – Internal Copy*" y sus declaraciones en cuanto a que el vehículo estuvo en reparación por un periodo acumulado de aproximadamente un año y medio.

De otra parte, la señora Rodríguez Rivera, arguye que incidió el foro administrativo al no conceder la resolución de la venta y ordenar la devolución del dinero conforme lo permite la Regla 22 del Reglamento Núm. 7159, *supra*. Argumenta que, la evidencia documental y testimonial presentada en el caso demostró fehacientemente que su vehículo fue llevado al taller en múltiples ocasiones por defectos que, aunque en algunos momentos parecían corregidos, reaparecían bajo condiciones normales de uso. Refuta que el hecho de que tras cada reparación se consignara que el vehículo funcionaba adecuadamente y luego este presentara fallos constituía prueba directa de que las reparaciones eran insuficientes para eliminar los defectos, por lo que se debía adjudicar su reclamación al amparo de la Regla 22, *supra*. Además, plantea que Flagship Volkswagen incumplió con su deber de informarle las campañas de seguridad o "*recalls*" que ha tenido su vehículo conforme exige la Regla 24.2 del Reglamento Núm. 7159, *supra*.

Por su parte, Flagship Volkswagen argumenta que, del expediente administrativo se desprende que el vehículo objeto aquí de controversia tiene un funcionamiento mecánico y automotriz

conforme a los parámetros del fabricante. Arguye que la parte recurrente tuvo oportunidad de presentar evidencia a los efectos de probar sus alegaciones durante la vista administrativa, pero debido a que no presentó ningún tipo de evidencia, sus argumentaciones constituyeron meras alegaciones. Así pues, concluye que, toda vez que la apreciación de la prueba efectuada por el foro administrativo estuvo basada, en su totalidad, en evidencia sustancial contenida en el expediente administrativo y no existen atisbos de error manifiesto, pasión, prejuicio y parcialidad, debemos otorgar deferencia a la determinación del DACo.

Luego de un análisis detenido y concienzudo del expediente ante esta Curia, constatamos que la parte recurrente no incluyó copia de la prueba ofrecida y no admitida en la vista administrativa. Si bien en su recurso, la señora Rodríguez Rivera enfatiza que, el documento intitulado "*Repair Order Detail – Internal Copy*" demostraba directamente los constantes desperfectos eléctricos de su vehículo, no poseemos documento alguno que controvierta los hallazgos del *Informe de Inspección* efectuado por el DACo y estipulado sin objeción de las partes. Recordemos que, es norma firmemente establecida que, "las determinaciones de hecho de los organismos administrativos tienen a su favor una presunción de regularidad y corrección que debe ser respetada, mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Empresas Toledo v. Junta de Subastas,* 168 DPR 771, 783 (2006).

Siendo así, somos del criterio de que la parte recurrente no nos ha colocado en posición para revisar las determinaciones de hechos realizadas por el organismo administrativo. Por lo que, en ausencia de la referida prueba, la señora Rodríguez Rivera no presentó ante nuestra consideración prueba suficiente que derrotara la presunción de legalidad y corrección de la decisión

recurrida. Siendo ello así, y ante la norma imperante en nuestro ordenamiento jurídico, debemos darle total deferencia a las determinaciones de hechos a las que arribó el DACo.

Cónsono con lo anterior, no podemos concluir que la determinación final del DACo fuera una arbitraria, irrazonable o contraria a derecho. Así, sostenemos que las determinaciones de hechos que realizó el foro administrativo están sostenidas por evidencia sustancial y las conclusiones de derecho fueron correctas. Por ello, procede que confirmemos en su totalidad el dictamen administrativo impugnado.

**IV.**

Por los fundamentos antes expuestos, se *confirma* la *Resolución* emitida el 11 de junio de 2025 por el Departamento de Asuntos al Consumidor.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana Martínez concurre sin opinión escrita.

Lilia M. Oquendo Solís
Secretaria Tribunal de Apelaciones